IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHELLE R. WATKINS,

              Plaintiff,

vs.                            Case No. 10-2088-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

              Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On January 17, 2008 administrative law judge (ALJ) Linda L. Sybrant issued her 1st decision (R. at 31-38). On April 24, 2008, the Appeals Council vacated the decision and remanded it for further hearing (R. at 42-44). The ALJ issued her 2nd decision on September 17, 2009 (R. at 16-25). Plaintiff alleges that she has been disabled since October 1, 2004 (R. at 16). Plaintiff is insured for disability insurance benefits through September 30, 2008 (R. at 18). At step one, the ALJ found that

plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability (R. at 18).  At step two, the ALJ found that plaintiff had the following severe impairments: status post fusion of the lumbar spine with degenerative changes, bilateral carpal tunnel syndrome, and evidence of narcotic pain medication abuse (R. at 19).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 19).  After determining plaintiff's RFC (R. at 19), the ALJ found at step four that plaintiff is unable to perform any past relevant work (R. at 24).  At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 24-25).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 25).

**III.  Did the ALJ err at step three in finding that plaintiff's impairments do not meet or equal listed impairment 1.04A?**

At step three, plaintiff has the burden of demonstrating, through medical evidence, that his/her impairments meet all of the specified medical criteria contained in a particular listing.  Riddle v. Halter, 10 Fed. Appx. 665, 667 (10th Cir. March 22, 2001).  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.  Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990).  Because the listed impairments, if met, operate to cut off further inquiry,

5

they should not be read expansively. Caviness v. Apfel, 4 F. Supp.2d 813, 818 (S.D. Ind. 1998).

The criteria for listed impairment 1.04 is as follows:

> 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2009 at 458).

The record contains the opinions of three treatment providers that plaintiff's impairments meet listed impairment 1.04A (Dr. Grote, July 21, 2005 (R. at 358), Dr. Dalenberg, January 29, 2009 (R. at 472), and Dr. Whitlow, February 3, 2009 (R. at 477)). All three physicians signed the same form which list the requirements for 1.04A, 1.04B, and 1.04C. The three physicians, without any explanation, placed a checkmark on the form indicating that plaintiff's condition met 1.04A (R. at 358, 472, 477).

At the hearing on May 20, 2009, Dr. Winkler, a medical expert, testified (R. at 536). Dr. Winkler reviewed the medical

records in the case (R. at 541). Dr. Winkler noted that Dr. Dalenberg and Dr. Whitlow had opined that plaintiff's impairments met listed impairment 1.04A (R. at 542), but testified that their opinions are:

> ...inconsistent with the entries in the
> record because 1.04A requires not only the
> pain but also tests for atrophy, sensory or
> reflex problems, none of which have been
> documented to occur here. And they -- it
> requires testing of straight leg raising both
> sitting and supine, which is not
> documented....We don't have a full amount of
> 1.04A because of the absence of the objective
> changes in strength, reflexes and
> sensation....But a listing, if we rely on the
> details of 1.04 is not met or equaled.

(R. at 542-543). After acknowledging the opinion of Dr. Grote (R. at 545-546), Dr. Winkler testified that "there's no documentation of the examination findings required to meet 1.04A having been present" (R. at 546), and noted an inconsistency with the straight-leg raising test (R. at 547-548).

In his decision, the ALJ gave greater weight to the testimony of Dr. Winkler that plaintiff's impairments did not meet listed impairment 1.04A. His findings on this issue were as follows:

> [Finally], the undersigned has considered the
> opinions of the treating physicians. On July
> 21, 2005, Dr, Grote opined (p. 78) that
> claimant met Listing 1,04A. Dr, Whitlow and
> Dr. Dalenberg expressed the same opinion (pp.
> 192, 197) in January and February 2009. As
> Dr. Winkler, instructed, however, 1.04A
> requires a showing of weakness, atrophy, and
> sensory or reflex loss, which is not

7

>            documented in the evidence. Moreover, when
>            straight leg raising was done, the examiner
>            did not document whether the testing was done
>            in the supine or sitting position, which is
>            required by the Listing. When the
>            Representative asked Dr, Winkler about the
>            positive straight leg raising found by the
>            consultative examiner (p. 44), the
>            neurologist advised that the examiner was
>            pointing out an inconsistency on claimant's
>            part. As explained by Dr, Winkler, whether
>            seated or in a supine position, the results
>            should be within 5 to 10 degrees of each
>            other, In claimant's case, there was a
>            difference of 45 degrees on the right and 30
>            degrees on the left.

(R. at 23).

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are generally given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When an ALJ rejects a treating physician's opinion, he must articulate specific, legitimate reasons for his decision. If the ALJ intends to rely on a nontreating or examiner's opinion, he must explain the weight he is giving to it. He must also give good reasons in his written decision for the weight he gave to the treating physician's opinion. Hamlin

8

v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).

Treating source opinions on issues that are reserved to the Commissioner[1] should be carefully considered and must never be ignored, but they are never entitled to controlling weight or special significance. Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled. SSR 96-5p, 1996 WL 374183 at *2-3.

A treating physician's report may be rejected if it is brief, conclusory, and unsupported by medical evidence. Griner v. Astrue, 281 Fed. Appx. 797, 800 (10th Cir. June 12, 2008); Bernal v. Bowen, 851 F.2d 2997, 301 (10th Cir. 1988). None of the three physicians who opined that plaintiff's impairments met listed impairment 1.04A provided any explanation for their opinion; they simply placed a checkmark on a form indicating that plaintiff's condition met 1.04A. Furthermore, Dr. Winkler testified that their opinions are not supported by the medical evidence. He testified that there is no documentation in the medical records that many of the criteria of 1.04A (i.e.,

---

[1] Issues reserved to the Commissioner include: (1) whether an claimant's impairment meets or is equivalent in severity to a listed impairment, (2) a claimant's RFC, (3) whether a claimant can perform past relevant work, and (4) whether a claimant is disabled. SSR 96-5p, 1996 WL 374183 at *2.

9

atrophy, sensory or reflex problems, positive straight-leg raising) are met in regards to the plaintiff.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

The ALJ relied on the testimony of Dr. Winkler that there is no documentation in the medical records that many of the criteria of 1.04A have been met in this case. The only medical evidence cited to by plaintiff indicating that 1.04A is met are conclusory statements by three treating physicians that the impairment is met, without any explanation in support of their findings. The

court finds that the ALJ had a legitimate basis to reject the opinions of the three physicians that plaintiff's impairments met listed impairment 1.04A because their opinions were brief, conclusory and unsupported by the medical evidence.

**IV. Did the ALJ err in making his RFC findings and in his consideration of the relevant medical opinion evidence?**

The record also contains the opinions of four treating physicians regarding plaintiff's RFC. They are: (1) Dr. Grote, an undated assessment covering the period from September 12, 2002 through July 21, 2004 (R. at 359-361), (2) Dr. Christiano, dated January 10, 2007 and covering the period from October 2, 2006 through January 10, 2007 (R. at 424-426), (3) Dr. Dalenberg, dated January 29, 2009 and covering the period from 2004 through January 29, 2009 (R. at 473-475), and (4) Dr. Whitlow, dated February 3, 2009, and covering the period from 2004 through February 3, 2009 (R. at 478-480).

The four assessments vary widely regarding many of plaintiff's limitations. For example, they indicate the following:

| limitation | <u>Grote</u> | <u>Christiano</u> | <u>Dalenberg</u> | <u>Whitlow</u> |
|---|---|---|---|---|
| sitting | <6 hrs. & alternate sit/stand | <2 hrs. & alternate sit/stand | alternate sit/stand | alternate sit/stand |
| balance | never | never | frequent | frequent |
| stoop | never | never | occasional | occasional |

11

| | | | | |
|---|---|---|---|---|
| kneel | occasional | never | occasional | occasional |
| crouch | never | never | occasional | occasional |
| crawl | never | never | frequent | frequent |
| reach | limited | limited | unlimited | unlimited |
| need to elevate legs | no | yes | no | no |

All four physicians agreed that plaintiff was limited to lifting less than 10 pounds, standing/walking less than 2 hours in an 8 hour workday, and that plaintiff would sometimes need to take unscheduled breaks during an 8 hour work day (R. at 359-361, 424-426, 473-475, 478-480).

The record also contains the testimony of Dr. Winkler, a medical expert. His testimony regarding the above opinions and his own opinions regarding plaintiff's RFC was as follows:

> So in terms of residual functional capacity I would agree with Dr. Wicklow's statement that the claimant repeatedly should not lift. He said less than 10 -- limitation of less than 10 pounds. Certainly I would say no more than 10 pounds repeatedly. And as far as the tolerance for standing and walking I think the only source of information from that would be the testimony of the claimant. I think the limitations expressed by Dr. Delinberg and Wicklow must have been based upon the history they obtained from the claimant since nowhere do they state that they actually objectively tested that endurance. The back problem would justify no repeated bending or stooping or twisting. And the carpal tunnel syndrome would lead to a limitation of no continuous keyboard use and no constant and repeated manual manipulation such as one might have to do in the course of

bench work in a factory.

(R. at 543-544). In response to questions by plaintiff's counsel, Dr. Winkler also briefly commented on the RFC opinions expressed by Dr. Grote and Dr. Christiano (R. at 545-546). Dr. Winkler indicated that the opinions of these two physicians showed similar limitations as the two physicians he had previously commented on (Dr. Dalenberg and Dr. Whitlow) (R. at 546).

The ALJ made the following findings regarding the medical opinions pertaining to plaintiff's RFC:

> Medical source statements have been provided by Dr. Peter Christiano and ARNP Amy Frick on January 10, 2007 (pp. 141-143), by Dr. Dale Dalenberg on January 29, 2009 (pp. 189-191), and by Dr. Richard Whitlow on February 9, 2009 (pp. 194-196). All of these statements limit the claimant to less than sedentary work. While giving the statements some weight, controlling weight cannot be given because they are based on claimant's self reporting. Drs. Dalenberg and Whitlow state that their assessments cover the period 2004 to 2009. Yet, neither saw the claimant until 2008. It is apparent that the limitations are based on claimant's self reporting. In addition, the report of Dr. Cristiano and practitioner Frick limits sitting to less than 2 hours in an eight-hour day and a need to elevate the legs, which is not reasonable in light of the medical signs and findings recited above. The real issue in this case is the degree of claimant's pain, which cannot be objectively tested. The problem with claimant's self reporting of limitations and pain is that she lacks credibility. The narcotic pain medication seeking and abuse reflects that she exaggerates her pain in order to get the drugs. She has been less

13

> than honest with the doctors about taking
> Xanax and narcotic pain medication.
> Similarly, it can be inferred that she
> exaggerates her pain in an effort to get
> disability benefits. And certainly her
> testimony at last hearing that she does not
> like taking pills and takes what she is
> supposed to does not ring true.

(R. at 23).

The ALJ discounted the opinions of the treatment providers, in part, because he found that their opinions were based on plaintiff's self-reporting. Dr. Winkler testified that he believed that the only source of information for the limitations expressed by some of the treatment providers was the testimony of the plaintiff (R. at 543-544). The ALJ further found that plaintiff was not credible, a finding not challenged by the plaintiff in her brief. The ALJ also noted that the opinions of Dr. Cristiano in regards to limitations on sitting and a need to elevate the legs was not supported by the medical evidence. As noted above, the opinions of Dr. Cristiano in regards to limitations on plaintiff's ability to sit and the need to elevate her legs were not supported by the other three treatment providers or by Dr. Winkler.

The ALJ gave greater weight to the opinions of Dr. Winkler, indicating that he found that Dr. Winkler's opinions were supported by the medical evidence (R. at 23). Dr. Winkler testified that plaintiff's back problems would justify no repeated bending, stooping or twisting. He further testified

14

that the carpal tunnel syndrome would lead to a limitation of no continuous keyboard use and no constant and repeated manual manipulation such as one might have to do in the course of bench work in a factory (R. at 544). The ALJ's RFC findings were that plaintiff is limited to sedentary work, and must avoid bending, stooping, twisting, continuous keyboard use, and constant and repetitive manual manipulation such as assembly line work (R. at 19). Thus, it is clear that the ALJ's RFC findings are based on the opinions of Dr. Winkler.

The ALJ also relied on the opinion of the state agency non-examining physician who opined that plaintiff was limited to sedentary work (R. at 23, 330-337). Furthermore, the ALJ gave some weight to the opinion of Dr. Brovinder, a medical expert who testified at an earlier hearing (R. at 23, 556, 560-565). However, the ALJ acknowledged that Dr. Brovinder did not have available to him all the medical records (R. at 23).

As noted above, the court will not reweigh the evidence. The court finds that the ALJ has set forth specific and legitimate reasons for giving greater weight to the opinions of Dr. Winkler and for discounting the opinions of the treatment providers. The court finds that substantial evidence in the record supports the ALJ's RFC findings for the plaintiff.

**V. Did the ALJ pose a hypothetical question to the vocational expert (VE) that related with precision plaintiff's impairments?**

15

Plaintiff argues that the hypothetical question posed to the VE did not clearly set forth the limitations testified to by Dr. Winkler. At the hearing, the ALJ posed the following hypothetical question to the VE:

> All right. If you first assume an individual of the claimant's age, education, work history and you assume the person is limited to sedentary exertional work, and where I am with this is not exactly his words, but this should be Dr. Winkler's -- what his RFC was. The need to avoid bending, stooping, twisting and the like, no continuous keyboard activity, and no constant repeated manual manipulation.

(R. at 551). Testimony elicited by hypothetical questions that do not relate "with precision" all of a claimant's impairments cannot constitute substantial evidence to support the ALJ's decision. Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991). However, the court finds that the hypothetical question substantially complies with the ALJ's RFC findings and the testimony of Dr. Winkler, which were previously set forth in this opinion.

**VI. Did the ALJ err by misstating the educational background of the plaintiff to the vocational expert (VE)?**

In his decision, the ALJ stated that plaintiff has at least a high school education (R. at 24). A high school education is defined in the regulations as abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th

16

grade level or above.  20 C.F.R. § 404.1564(b)(4).

Plaintiff testified at the first hearing that she went to school "until the 10th grade" (R. at 566), that she did not have a GED, but that she can read and write (R. at 567).  However, an unsigned disability report dated April 16, 2008 states that plaintiff completed one year of college and did not attend special education classes (R. at 270-271).

Plaintiff argues that because the ALJ provided incorrect information to the VE regarding plaintiff's educational level, any testimony from the VE cannot be used as substantial evidence to support a denial of benefits (Doc. 5 at 22).  However, at the hearing, the ALJ simply asked the VE to "assume an individual of the claimant's age, education..." (R. at 551).  The ALJ did not provide any more information regarding plaintiff's educational level to the VE at the hearing on May 20, 2009.

There is no evidence that the ALJ provided incorrect information to the VE regarding plaintiff's educational level. The evidence in the record regarding plaintiff's educational level is contradictory, and it is not clear from the record what information the VE had before her regarding plaintiff's educational record.  Furthermore, even assuming that plaintiff had only a 10th grade education, there is no evidence that plaintiff would be unable to perform the unskilled jobs identified by the VE (R. at 552) if she only had a 10th grade

education. The court therefore finds no error by the ALJ in her characterization of plaintiff's educational level to the VE.

**VII. Did the ALJ violate plaintiff's due process because of an unreasonable delay in complying with the Appeals Council remand order?**

On January 17, 2008, administrative law judge (ALJ) Linda L. Sybrant issued her 1st decision (R. at 31-38). On April 24, 2008, the Appeals Council vacated the decision and remanded it for further hearing (R. at 42-44). On June 6, 2008, the ALJ informed plaintiff's counsel that he would be informed of a new hearing date (R. at 90-92). On January 27, 2009, the ALJ asked plaintiff's counsel to provide certain information within 10 days (R. at 93-94). On March 10, 2009, the ALJ informed plaintiff that a hearing had been scheduled for April 3, 2009 (R. at 96-102). On April 29, 2009, the ALJ informed plaintiff that a hearing had been scheduled for May 20, 2009 (R. at 104-113). The hearing was held on May 20, 2009 (R. at 536). The ALJ then issued her 2nd decision on September 17, 2009 (R. at 16-25). Plaintiff was insured for disability insurance benefits through September 30, 2008 (R. at 18).

Plaintiff contends that the ALJ violated her due process rights by not holding the administrative hearing until 13 months after the Appeals Council remanded her case to the ALJ, and by not issuing a decision until September 17, 2009. Plaintiff

18

argues that the delay in the ALJ decision, which came after the expiration of plaintiff's insured status, precluded the plaintiff from starting a new claim for Title II benefits because her insured status had expired.

Basic principles of due process require notice and an opportunity to be heard before social security disability benefits can be denied. Degnan v. Sebelius, 658 F. Supp.3d 969, 986-987 (D. Minn. 2009). An administrative delay can be so unreasonable as to deny due process. Degnan, 658 F. Supp.2d at 987; Winger v. Barnhart, 320 F. Supp.2d 741, 747 (C.D. Ill. 2004). However, since administrative efficiency is not a subject particularly suited to judicial evaluation, the courts should be reluctant to intervene in the administrative adjudication process absent clear congressional guidelines or a threat to a constitutional interest. Winger, 320 F. Supp.2d at 747. Regrettably, delay is a natural concomitant of our administrative bureaucracy. Degnan, 658 F. Supp.2d at 987. Furthermore, courts cannot prescribe mandatory deadlines for the processing of Social Security claims. Heckler v. Day, 467 U.S. 104, 119, 104 S. Ct. 2249, 2257 (1984). The court finds that the delay of 13 months from the Appeals Council remand to the hearing, and the delay of 17 months from the Appeals Council decision to the 2nd ALJ decision did not deprive plaintiff of due process. See Degnan, 658 F. Supp.2d at 987 (delay of 13 months from ALJ decision to

denial of request for review by Appeals Council and total of 2 years and 8 months for entire administrative review process not a constitutionally unreasonable delay); Winger, 320 F. Supp. 2d at 747-748 (13 month delay from request for hearing before ALJ to the hearing held not to violate due process).

Furthermore, even though the ALJ decision came after the expiration of plaintiff's insured status, a claimant, if they are eventually found to be entitled to benefits, may receive benefits for up to 12 months immediately before the month in which the application for benefits is filed. 20 C.F.R. § 404.621(a). Plaintiff filed for benefits on February 25, 2005. Thus, the mere fact that the ALJ decision came after the expiration of plaintiff's insured status would have no adverse impact on plaintiff's ability to receive benefits as far back as October 1, 2004 (the alleged onset date) if plaintiff's claim is found to be meritorious. Plaintiff was therefore not prejudiced because the ALJ decision came after the expiration of her insured status.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Dated this 16th day of February, 2011, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow
U.S. District Senior Judge